Good morning, your honors. My name is David Michael. I am the attorney for the estate of Betty Mariani and Terri Bukowski, who is the sole heir to that estate. This is a civil forfeiture matter, and the first issue I want to address is the argument made by the government for the first time in its opposition brief that the Betty Mariani estate or Terri Bukowski have no standing in this case. That argument was never raised before, was never raised in the district court. It's a fact-laden issue about the issue of standing in any event. And in the district court, the government even agreed that they need to provide notice to the Richard Miller LLC, which is required by Rule G4, that David Bukowski, Dale Bukowski, who is the daughter of Terri Bukowski, was associated with the Richard Miller LLC, and that they made some effort to find the Betty Mariani estate during the whole process of this litigation. Now, the issue of standing in a civil forfeiture matter is really something that has to be decided on a factual basis, but it's sort of a two-pronged issue. First of all, Article III standing is easily established by the pleadings initially in a civil forfeiture matter. All a person has to do is file a notice or a claim saying that they have either an ownership or a possessory interest or a legal interest in the property. And all Article III standing does, it's a pleading requirement that opens the door, the courthouse door to claim it. So for the government to try to challenge a claimant's Article III standing, that's a factual dispute that happens downstream in a case after the case has begun its litigation. So it's inappropriate for the government to now, for the first time in its opposition, to claim that the estate of Betty Mariani and Terri Bukowski, who is her sole heir, do not have standing. They never made that representation in the court below. Even if, even if the government had a right to raise that issue for the first time in its opposition, they were wrong. They completely misinterpreted Iowa law. And as we said in the reply brief, just because Betty Mariani died didn't terminate any interest she had in the Miller LLC. If that was true and the LLC gets dissolved, then nobody would have owned the property. And that's not how the law is. As a matter of fact, the Iowa codes specifically say that if Betty Mariani dies, then her heirs take the position that she took in regards to the property that she was the, according to the government, the manager, the agent for. But in fact, under the Iowa codes, she was not just the agent, she was the owner and the sole owner of everything that was involved in the Miller LLC. So either way, even if they could make that argument, they misinterpreted the law itself in terms of what happens to the property when the LLC is dissolved or when Betty Mariani dies. So I wanted to address that at the onset. I've argued this Article 3 standing in a number of circuit courts. And it is not a rigorous standing. It's just a pleading thing. It's just what you put in that claim, saying that you have an ownership or a possessory interest, that's sufficient to open the courthouse doors to any claimant in a civil forfeiture action. The next issue, which is really, I think, the big fundamental issue in this case, is the ruling by Judge Longstaff in the Southern District of Iowa that this Rule G4B5, which says a potential claimant who has actual notice of the forfeiture action may not oppose or be released from forfeiture because of the government's failure to send the required notice. That is what the district court used to strike the claim of my clients. But this statute has never, ever been used to strike a person's claim in a forfeiture action. The purpose of this statute has nothing to do with striking a claim. What it has to do with is, if a person appears in a forfeiture action, that person cannot claim that the government cannot obtain forfeiture because they didn't comply with the notice requirements. But that's a person who's appearing in the forfeiture action. In fact, what's important is that this statute in no way can trump the government's constitutionally mandated due process requirement to provide notice. It's all about notice. This particular statute never says anything about that. No court has ever interpreted that statute to say that it eliminates the government's requirement to provide notice. In fact, the government never provided notice to Betty Mariani State. It never provided notice to Terry Bukowski. And that is what was fatal to the government's position. And the issue of notice in a civil forfeiture action has very, very strong constitutional dimensions. Congress passed the Civil Asset Forfeiture Act back in 2000, and it was very conscious of the prior law depriving people of their due process rights. And I want to read from two cases actually that were cited by the government, by ourselves, by the court, and all of the pleadings in the district court below. The first case is that US versus one star class loop sailboat. That was out of the first circuit in 2006, not too long ago, after CAFRA in the year 2000, when it was passed and signed by President Clinton. It says, the imperatives of the supplemental rules, and that's this rule that I just read, rule G4B5, which the court relied on to strike my client's claims. The imperatives of the supplemental rules do not trump or permit to provide notice sufficient to satisfy the demands of due process before the confiscation of that property with judicial forfeiture. And it goes on to say, when the government knows or easily can ascertain the ID and whereabouts of potential claimants, reasonableness requires the government at a minimum to take the easily available steps to notify those claimants. Now that was also recited by the district court way back in 1998, before CAFRA was even enacted in the year 2000. And the issue here is the government at some point in time was advised by my office, as it is in the briefs, that there was the estate of Betty Mariani and that I may be representing the estate of Betty Mariani and her heir, Terry Bukowski. That's not the first time that the government has been advised that there's an attorney involved and he's interested in representing somebody in the case. This court in 2005, in US versus, I pronounce it PUIG. It's in all the briefs by both parties. Said, what happens when the government gets a letter from an attorney? The government sends a notice to attorney, including the statutory deadline. The time for filing starts to run at the time the attorney's receipt of the notice. Not from the time the attorney knew or the time that the party knew, but at the time the attorney receives the notice from the government. Now, the constitutionally required notice for civil forfeiture actions is really quite laid out. The government has to give, and every single forfeiture, the government sends out these standard notices. It's all the same and it's uniform throughout the country. It says, we got the property, here's your notice, we're going to forfeit it. You've got so many days, here's the complaint for forfeiture, and you've got at least 35 days to file a claim opposing the forfeiture. And after that, you've got 20 days to file an answer. Here's the court it's in, and here's how we're proceeding, and we are the parties that you have to serve the claim on and file it with the court. It's a very rigorous, well-established requirement. In this case, the government knew that I would be representing the estate. The government knew that there was a Betty Mariana estate. They knew that the heir was Terry Bukowski. For some reason, the government claims they couldn't find that estate, but that's not what's really important. Once they got that letter from me saying, hey, there's this case, I'm going to be representing the estate of Mariani, what's going on, and I sent it to the US attorney. Then US versus Pew in this case, in this court decided in 2005 said, that mandates the government under the Constitution to give that notice to me. It's easy to ascertain, it's easy to find, give him notice, and then that starts the clock running. But let me, before you run out of time, let me just ask you one thing. Assuming we agree with everything you say, you also are representing Dale Bukowski, is that how you pronounce it? We are not pursuing the Dale Bukowski remedy. That's why I wanted to ask. In the appeal. Because he did get notice. He got notice. He got the actual notice of why they didn't serve Terry, why they didn't serve the estate. And he was only a successor heir anyhow. He's the son of Terry Bukowski. She's the only sole heir to the Betty Mariani estate. So he was only a potential- I just wanted to clarify that. Right, right. I thought it was in a footnote somewhere, but I couldn't even find it myself earlier. Also, the Fourth Circuit did the same thing in the US versus Munson, which is in our briefs. Once they found out there was an attorney, the government sent the notice to the attorney by certified mail. That starts the time running for filing the claim. And a very critical time period, it's very critical. Under the facts of our case, what is a claimant supposed to do? What is a claimant supposed to know? The government published notice, and the district court said, well, they knew about this action. And therefore, the court uses this publication deadline as a deadline for filing a claim. What we did is, since the government never finally served the estate or served Terry Bukowski, I've been doing forfeitures for almost 20 years, I just figured, well, what the heck, I'm just going to go in and file a claim. There was no time limit requirement, but the government struck the claim because it was beyond this publication date, which has nothing to do with the government's requirement for notice. I do want to save the rest of my time to argue this abuse of discretion issue, if it arises with the court. You may do so, you may do so. Thank you, Your Honor. We'll hear from the government, Ms. Jennings. Good morning, you may proceed. Mr. Michael, my name is Amy Jennings and I represent the United States in this matter. In this case, the district court properly found that the claims filed by the claimants were untimely. The district court also properly found that the claimants had actual notice and therefore could not make a notice-based constitutional challenge to the forfeiture proceedings. And it also properly found that considering the pioneer factors, because no reason was given for this untimely claim, reason being the most important factor in that analysis, that there was no reason for excusable neglect at the district court. Why didn't you just send the attorney a notice when you got the call? My understanding of the record is that at that point, the United States Attorney's Office was under the understanding that the attorney had notice, and that at that point, the claimants must have- Did they know if he knew the deadline? I'm not sure if they knew the deadline or not, if our attorney knew about the deadline. But the reasoning of our office was that Mr. Michaels, an attorney in California, this forfeiture proceeding was concerning four lots and a residence in Iowa. And it had very tenuous ties to a deceased woman who lived in Illinois. And that through his contact with our office, through him saying, he said during his oral argument, the US Attorney's Office knew I was representing the estate of Betty Mariani. At that point, the government believed that they had actual notice of the proceedings. He had called about them. He said he's been practicing forfeiture law for 20 years and would be able to ascertain what the deadlines would be at that point. Your position is that it was his responsibility to find out the deadline? I'm not sure if the actual notice. The Internet publication contains the deadlines for the filing. It says that it has to be within 60 days after the first date of publication. So it is available on the Internet. And I am not sure if the forfeiture attorney in our office specifically advised this claimant of the, this attorney of the deadline. I don't think there's been a claim that he wasn't aware of the deadline. Just the main thrust of his claim is that the government botched its direct notice obligations by not informing the estate or the heir to the estate, who is Terry in this case. With respect to the record, I'd just like to address a couple things. These are four lots of land, one residence. The United States started this forfeiture proceeding because as a part of a search warrant at a related property, there was a marijuana grow. They did a search warrant at the house that is the subject of these forfeiture proceedings and they found that there were purchase contracts for these properties as well as some paraphernalia in the residence. They also found that there were some credit cards with Richard Miller LLC, his name on it, and also the name of Dale Buxkowski. Once the forfeiture proceedings were started, the government gave direct notice to Dale Buxkowski. And they did that because he had been somewhat associated with the Richard Miller LLC, which was the actual owner of these properties, and the estate of Betty Mariani. At that point, the government did not discover that there was an actual probate in process and gave notice to the two banking institutions that were associated with the property, gave notice to Dale Buxkowski. Also complied with the publication on the Internet of the notice and also posted notice of the forfeiture proceedings on the actual properties themselves. While that time frame was running, the attorney contacted the US Attorney's Office, said he knew about the forfeiture proceedings and that he may be representing the estate. And after the time frame for both the direct notice to Dale Buxkowski expired and the time frame based on the 60 days from the first date of Internet publication expired, at that point they filed their claims to enter into this forfeiture proceeding. Now, the district court properly found that there was actual notice in this case. The email, which is a part of the record, memorializes the conversation that the attorney had with the United States Attorney's Office regarding the forfeiture proceedings. There's been no claim at any point in this litigation, no claim by the claimants, that they did not have actual notice. Never said that at any point in the district court. And they had many, many opportunities to do it. They could have said we didn't have actual notice when they filed these claims initially. They could have said we don't have actual notice when they filed their opposition to the government's motion to strike. They could have said it when they requested the ability to provide supplemental briefing to the district court on this issue. Didn't say anything about not having actual notice. Never claimed that. And they could have said it, lastly, when they moved to the district court to reconsider their order, finding that the claims were untimely, at no point was there ever a claim, we don't have actual notice. And the email submitted to the district court by the government provides evidence in the record that shows that the district court's finding that there was actual notice should be upheld. With respect to the next point, the district court applied this rule G4B5 because the rules state when a claimant has actual notice, that they cannot come back and make a constitutionally based notice challenge for a lack of direct notice being sent to them. The notice procedures worked in this case. During the time frame that the forfeiture proceedings were pending, during the time frame he could have filed a claim, the attorney contacted the United States Attorney's Office about those forfeiture proceedings. Now, the claim's attorney made some mention that this court had never, that no court had ever used that particular rule, and while rule G4B5 was not in existence at the time this case was decided, US currency totaling 3,800, 179, and 49 cents, which is a 1987 East Circuit case. Essentially, that's referenced in our brief, encompasses that concept. There was a default judgment, and that default judgment was based on the fact that the claimants had actual notice, and so they couldn't make any type of attack on the government's failure to send direct notice, and that decision was affirmed by this court. When we- I think he said it's never been used in the context where there was a late filed claim, but before there was a judgment. Have you ever found a case where it's been used to strike a claim? I can submit some supplemental briefing on that point if the- I mean, no, I think that's what he's saying is, I think he was arguing that it's never been used to strike a claim as untimely. And, I mean, the rule exists, though. It says that, at that point, the district court could apply it to strike a claim as untimely. And in a lot of the cases that discuss this particular rule, which is one star class sloop sailboat and Gonzalez, Gonzalez. Now, those are cases that were remanded to the district court for further proceedings. But in those cases, they draw a distinction between advance notice in fact of the forfeiture proceeding. And notice in fact of the seizure, or notice in fact that the property had actually been forfeited. Now, they say that when you only have the notice of the seizure, the notice of the final forfeiture of the property, this rule can't be used to kick you out. But when you have actual notice of the forfeiture proceedings, which is what the claimants had in this case, as evidenced by their contact with the US Attorney's Office, at that point, that rule does come into play because the claimants had the opportunity to be a part of the forfeiture proceedings as they were proceeding. With respect to the claimant's argument regarding whether or not the government raised the direct notice argument below whether or not the claimants were entitled to direct notice. With respect to that argument, we did cite to the general rule that if you have actual notice, direct notice is not implicated, and the district court also reached the conclusion that it wasn't going to consider direct notice in this case because actual notice had been provided and therefore we don't need to reach that question. And it's the government's position that in this case, because there is actual notice, we don't need to reach the question of whether or not direct notice was actually, was properly provided or whether the government botched that obligation because actual notice occurred in this case. And with respect to the claimant's attorney's citation to Puig, in that case, the court did not require, there was not a requirement that once the claimant's attorney contacts the government, the government has to send direct notice. That's not the holding of the case. The case acknowledges that that's what happened in that particular factual situation, but that's not the holding of what actually the court came down with in Puig. What would be, what might be some of the unforeseen consequences if we were to hold that notice now has to be sent? That we don't agree with the district court that what happened here is sufficient compliance with the rules. Would there be any downsides to that holding? To holding that direct notice had to be sent to the claimants? The downside would be that it would essentially take away the meaning of the rule GB4B, which states that actual notice. If you have actual notice, that's enough. And we're not going to look behind and see what happened with direct notice, because once the actual notice is given, it's sufficient. So that would be the downside, it would be- That would be my concern, because on the face of it, one could say, well, why didn't you do it right? It's no big deal, we'll start over from ground one. But sometimes we don't think through the consequences of a holding of that nature. And what you've pointed out is it might eviscerate, you have the effect of eviscerating the actual notice aspects of this case. Yes, your honor. And in this particular case- It would have been- Go ahead, I'm sorry. No, I'm trying to think of the appellate. No, no, I was going to say, I'm not going to say it. Go on with your argument. Okay. Moving on to the consideration of whether there was excusable neglect. The district court properly considered the factors in this case. With respect to this interpretation of the good faith requirement, the requirement is that whether or not the claimant made a good faith attempt to file their claim in court in a timely manner. The government doesn't agree with the interpretation that that good faith element or that good faith factor lies on the government. That doesn't seem to be how the cases apply it. The district court properly found that essentially five of the elements rusted with the government. With respect to the prejudice factor, the government presented reasons why it would be a negative consequence to the government to- I've forgotten what those were, or what they are. The government said that the property value may depreciate, and the claimant pointed out that- Don't know anything about the property, whether this is a woodsman's rude hut or a mini mansion, I don't know. We're not supposed to know anything about the value of it, but other than your allegation that it might depreciate in value during any prolongation of these proceedings. There's really not any other prejudice to the government other than to have the proceeding resolved and have the application of the actual time frames mean something, especially in- I suppose there's importance to that, but I guess you're answering the question, right? The finality of the proceeding. And the reason for the delay is the most important factor that's been identified in the context of- In other words, did the district court, in effect, without saying it, saying these clients turned their affairs over to Mr. Michael and they have to live with the consequences? No, I don't know that. No, Judge Longstaff wouldn't say that. I'm saying it, perhaps. That he didn't file in time, essentially. Right. The government's position is that the district court properly weighed these factors, that the most important factor is that there was no reason at any point in the district court given why the notice was late, other than the government screwed up, which is not an acceptable reason once the I see your time is up, unless we have further questions. We thank you for your argument. Thank you. Mr. Michael. The government throws out this concept of notice, actual notice, statutory notice, real notice, that there's a real clear statute that talks about the government's obligation for notice. It's in the briefs. The court, the government must send a notice. It must have a date of the notice. It must have the deadline for filing the claim, which is not less than 35 days. It must have said that an answer has to be filed no later than 21 days after the claim is filed after that 35 days, and it must have the name of the government attorney to be served. That package is a package that the government uses routinely to send to potential claimants. They routinely use it in the thousands of forfeiture cases that happen in this country over the years. They've got it down. They've got the package down. It's a copy of the complaint. It's the notice to the potential claimant. It says here's what you gotta do. And especially in the case involving real property, this is real property owned by my clients. And they've got to comply with that notice. It's not a matter of they knew that there was a forfeiture action. The notice that the government's relying on is this publication notice that the government also has to do parallel to notice. The publication notice does not relieve the government of its obligation to file actual notice if they have any way and means to be able to ascertain who they can send that notice to. And the Pew case right out of this circuit says, and so do about four other circuits say the same thing. When an attorney communicates with the government, and the government can ascertain that attorney, the government is obliged, as this court ruled in Pew, to send that notice to that attorney. That is notice- What's your answer to the argument though? At a minimum, you knew there was a forfeiture. You knew where the property was at. You knew the judicial district in which it was pending. And by calling the US Attorney's Office, you got the name of the attorney, and actually talked to the attorney, right? Correct. So you knew most of, arguably the only thing you didn't know was what's the deadline for filing a claim. That's critical. Which is a critical point, I agree with that. But what's your argument? Well, you could have asked the attorney, you could have just gone on the Internet, you've done it for 20 years, you know that they post these routinely. What's your response to that argument? The response is that what you do is you wait for the government to provide the notice. They do it, they put the package together. I've had many times where I've contacted the government and said, hey, what's going on in this case? Boom, they send out the notice. They know how to do that. They know the rules, they know the law, they know what the circuits say about notice. They know how constitutionally mandated it is, it's due process. It's not just the government throwing out this thought beam that says, well, there's a publication. All of a sudden, the judge will say, well, you should have relied on the publication deadline. Where'd that come from? Where'd reliance on this publication deadline come from? Other than from Judge Langstaff, who just sort of, I hate to say it, invented it. You know, there's no publication deadline. And so an attorney who knows forfeitures is more susceptible to believing that we've got to wait for the government's statutory constitutionally mandated notice, that's what I was waiting for when the government didn't send it out. I just said, what the heck? I'll shoot in the claims anyhow. Now, and this rule, G4- I guess, to sort of get to Judge Wolman's question earlier, what's sort of just the practical way this works. Why would you wait? Why would you not just go ahead and file the claim? I mean, are there ever cases where you call them up and you're so eloquent, they just say, we're going to drop the forfeiture? If the government, the US code says, I think it's 18 U.S.C. 853, says that the government actually has a 90 day window from the time there's a seizure of property. Now, in real property, it's a little tricky, because you do this warrant of arrest, you post the property with a warrant of arrest. Administrative agency, that constitutes a seizure date. There's a 90 day window that the government has to file their forfeiture action. If they don't do it within those 90 days, then in fact, they cannot pursue forfeiture against that property. Now, any smart forfeiture attorney knows, well look, the government has this time that they seize the property by posting it with a warrant of arrest. If they don't file their forfeiture action in 90 days, boom, I'm going to come in with what we call a rule 41G motion for return of property or 12B, whatever motion that fits a particular circuit. Each circuit has their own procedure that you can follow and say that the government's precluded from filing the forfeiture action. That's what a strategic forfeiture attorney will do. I didn't even care about doing that in this case, and I don't care about doing it now. And to answer your question, Judge Wolman, the consequences of ruling that the government should have provided actual notices just to let the claims be filed, which they were, to let those claims be recognized by the district court, and let the case go forward. We can litigate whether or not the government has a right to forfeit these properties or not. So the government's not harmed by saying the claims should be accepted by the court, and the court should not have stricken the claims, because that's what we're claiming, is to ask the court to set aside its motion striking the claims. So I don't think there's any harm to the government if the court rules that those claims should be accepted by the court as timely filed. And we don't even need to have to worry about the government having to provide notice. Very well, we thank you for the argument and for your adversaries of our argument. The case is submitted.  Thank you, Your Honor.